1
2
3
4

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

5
6
7
8
9
10
11
12

| | |
|---|---|
| NAVNEET SHARDA, M.D., | Case No. 2:16-CV-2233 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, et al., | |
| Defendant(s). | |

13
14
15
16
17

Presently before the court is defendants Sunrise Hospital and Medical Center, LLC ("Sunrise") and the Board of Trustees of Sunrise Hospital's motion to dismiss. (ECF No. 35). Plaintiff Navneet Sharda filed a response (ECF No. 46), to which defendants replied (ECF No. 50).

18

**I.    Facts**

19
20
21
22
23

The present case involves a dispute over Dr. Navneet Sharda's medical working privileges within Sunrise's Division of Radiation Oncology. (ECF No. 11). Plaintiff requests that the court order defendants: (1) to reinstate his medical privileges; (2) provide him with a "speedy" fair hearing through Sunrise; and (3) update the National Practitioner Data Bank ("NPDB") record, which currently indicates that plaintiff trespassed on Sunrise property. (ECF No. 11).

24
25
26

Dr. Sharda earned his privileges to practice medicine within Sunrise's Division of Radiation Oncology in 2001, which he maintained in some form (temporary, provisional, or active) for nearly ten years. (*Id.* at 4).

27
28

In 2001, Nevada Board of Medical Examiners ("NBME") member Dipak Desai offered Sharda business opportunities in exchange for 5 percent of his medical practice. (ECF No. 11 at

**James C. Mahan**
**U.S. District Judge**

12).  Sharda turned him down but alleges that Susan Reisinger accepted the same deal or a similar deal shortly thereafter. [1]  (*Id.*).  Plaintiff further alleges that from 2001 to present, Reisinger and Desai worked together to set up "administrative blocks" to Sharda's privileges.  (*Id.* at 13).

In October 2011, Sunrise wrote a letter to Sharda requesting information missing from his privileges application.  (*Id.* at 6).  Sharda did not provide the information, and his privileges consequently lapsed in November 2011.  (*Id.*).  Sunrise reinstated Sharda's privileges in January 2012.  (*Id.*).

In November 2013, plaintiff's privileges lapsed again.  (ECF No. 35 at 7).  Plaintiff filed a timely request for consideration ("RFC") but failed to provide additional information regarding past patient care pursuant to Sunrise's credentials committee request.  (*Id.* at 7–8).  The committee found that Sharda's RFC was incomplete.  (*Id.*).  Sunrise discontinued processing that RFC in February 2014.  (*Id.*).

In July 2015, plaintiff filed a second RFC, which Sunrise again denied on the grounds that Sharda had already failed to supply documentation in 2013.  (ECF No. 11 at 8).  Sharda did not appeal the decision; he submitted his third RFC in October 2015.  (*Id.* at 9).

In December 2015, with his third RFC pending, Sharda went to Sunrise to treat a patient.  (ECF No. 46).  Sharda had previously consulted with the patient and went to the hospital after receiving a text from Dr. Arrastia, a Sunrise employee, informing Sharda the patient was at Sunrise.  (*Id.*).  Following Sharda's visit, Sunrise sent him a cease and desist letter.  (ECF No. 46-5).  The letter barred Sharda from practicing medicine in the hospital and stated Sunrise would report his trespass to the Nevada Board of Medical Examiners ("NBME").  (*Id.*).

On January 5, 2016, Sunrise's credentials committee recommended denying Sharda's RFC because of his trespass and Sharda's settlement with the U.S. Department of Justice regarding a Medicare billing issue.  (ECF No. 46 at 7).  The medical executive committee accepted the recommendation and denied his October 2015 RFC.  (ECF No. 35 at 9–10).

---

[1]  Reisinger has acted as Sunrise's chief of radiation oncology from 2009 to present.  (ECF No. 11 at 5).  "Dipak Desai, M.D. ("Dr. Desai") is a Nevada resident, formerly a Nevada-licensed physician, currently incarcerated at the Northern Nevada Correctional Center."  (ECF No. 35 at 4).  Desai retired from the NBME in 2004.  (ECF No. 11 at 12).

1    In response, Sharda submitted a request for fair hearing on February 23, 2016; Sunrise

2    acknowledged the request in March. (*Id.*). Sharda did not provide the hospital with proposed dates

3    or times for the fair hearing. (ECF No. 11). Instead, plaintiff alleges it was Sunrise who failed to

4    schedule the hearing. (*Id.*). Plaintiff subsequently filed suit, alleging conspiracy, a due process

5    violation under the Fourteenth Amendment, an antitrust violation, tortious interference, breach of

6    contract, and seeking declaratory and injunctive relief. (*Id.*).

7    **II.    Legal Standard**

8    The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief

9    can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and

10   plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

11   Although rule 8 does not require detailed factual allegations, it does require more than labels and

12   conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic

13   recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662,

14   677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed

15   with nothing more than conclusions. *Id.* at 678–79.

16   To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state

17   a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff

18   pleads factual content that allows the court to draw the reasonable inference that the defendant is

19   liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent

20   with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does

21   not meet the requirements to show plausibility of entitlement to relief. *Id.*

22   In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply

23   when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations

24   contained in a complaint. *Id.* However, this requirement is inapplicable to legal conclusions. *Id.*

25   Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*

26   at 678. Where the complaint does not permit the court to infer more than the mere possibility of

27   misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.*

28

**James C. Mahan**
**U.S. District Judge**

1    at 679. When the allegations in a complaint have not crossed the line from conceivable to

2    plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

3        The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202,

4    1216 (9th Cir. 2011). The *Starr* court held:

5        First, to be entitled to the presumption of truth, allegations in a complaint or
         counterclaim may not simply recite the elements of a cause of action, but must
6        contain sufficient allegations of underlying facts to give fair notice and to enable
         the opposing party to defend itself effectively. Second, the factual allegations that
7        are taken as true must plausibly suggest an entitlement to relief, such that it is not
         unfair to require the opposing party to be subjected to the expense of discovery and
8        continued litigation.

9    *Id.*

10   **III.    Discussion**

11        *a.   Statute of limitations*

12        Under Nevada Revised Statutes ("NRS") 11.190(1)(b), "actions . . . may only be

13   commenced . . . [w]ithin 6 years . . . [on a]n action upon a contract, obligation, or liability founded

14   upon an instrument in writing."

15        Plaintiff's claims of tortious interference, breach of contract, and a due process violation

16   all stem from Sunrise's March 2016 letter acknowledging his request for a fair hearing. (ECF No.

17   11). The hospital bylaws detail the hearing process, and these claims are within the six year statute

18   of limitations because bylaws can be a contract. See NRS 11.90(1)(b); *Williams v. Univ. Med.*

19   *Ctr. of S. Nev.*, 688 F. Supp. 2d 1134, 1142 (D. Nev. 2010).

20        Under 15 U.S.C. § 15b, "any action to enforce [anything forbidden in the antitrust laws]

21   shall be forever barred unless commenced within four years after the cause of action accrued."

22   Plaintiff's claim of an antitrust violation stems from Sunrise's February 2016 NPDB filing, which

23   occurred within the four year statute of limitations. See 15 U.S.C. § 15b; (ECF No. 11 at 17).

24   Therefore, plaintiff's antitrust violation claim is not time barred. See 15 U.S.C. § 15b.

25        "Civil conspiracy is governed by the catch-all provision of NRS 11.229, which provides

26   that an action 'must be commenced within 4 years after the cause of action shall have accrued.'"

27   *Siragusa v. Brown*, 971 P.2d 801, 806 (Nev. 1998). That court held "that an action for civil

28

**James C. Mahan**
**U.S. District Judge**                                        - 4 -

conspiracy accrues when the plaintiff discovers or should have discovered all of the necessary facts constituting a conspiracy claim." *Id.* at 807.

Here, plaintiff's civil conspiracy claim alleges that from 2001 to present, Reisinger and Desai acted on an agreement to restrict Sharda's medical practice. (ECF No. 11 at 11–14). Since plaintiff's claim relied on facts occurring within the three year statute of limitations, it is not time barred. *See Siragusa*, 971 P.2d at 807.

### b. Health Care Quality Improvement Act ("HCQIA")

For a hospital to claim immunity under HCQIA, it must demonstrate: "(1) its professional review actions complied with the fairness standards set out in 42 U.S.C. § 11112(a); (2) it reported the results of the professional review action to state authorities [. . .]; and (3) the professional review actions commenced on or after November 14, 1986." *Smith v. Ricks*, 31 F.3d 1478, 1485 (9th Cir. 1994). Defendants and plaintiff do not dispute (2) and (3). (ECF Nos. 46-3, 50).

The fairness standards in § 11112(a) require peer review action to be taken:

> (1) in the reasonable belief that the action was in the furtherance of quality healthcare, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts.

If the hospital's behavior meets the fairness standards, then the court may decide that HCQIA immunity applies to the hospital on a motion to dismiss. *Straznicky v. Desert Springs Hosp.*, 642 F. Supp. 2d 1238, 1248–49 (D. Nev. 2009). Additionally, "a professional review action shall be presumed to have met the preceding standards . . . unless the presumption is rebutted by a preponderance of the evidence." 42 U.S.C. § 11112(a).

### 1. Quality healthcare

A reasonable, objective belief that the hospital's action was in furtherance of quality healthcare *is demonstrated "if the reviewers,* with the information available to them at the time of the professional review action, *would reasonably have concluded that their actions would restrict incompetent behavior or would protect patients." Austin v. McNamara, 979 F.2d 728, 734 (9th Cir. 1994) (emphasis removed) (quoting* H. R. Rep. No. 903, *reprinted in* 1986 U.S.C.C.A.N 6287,

6392–93).  Regardless of past animosity, if the hospital has a basis to believe action is warranted to provide better healthcare, it is reasonable.  *Id*.

Sunrise advanced quality care by denying Sharda's RFC request after considering his December 2015 trespass, when plaintiff treated a patient when he had no Sunrise medical privileges.  (ECF No. 35).  Sunrise also considered a separate settlement between plaintiff and the U.S. Department of Justice for Medicare billing.  (ECF No. 46 at 7).  Sharda claims he went to Sunrise in December 2015 on invitation from another doctor.  (*Id.*).  However, given plaintiff's issues with Medicare, maintaining medical privileges, and trespass, Sunrise's decision reasonably restricted incompetent behavior to protect its patients.  *See Austin, 979 F.2d at 734; (ECF No. 46 at 7).*

### 2. Efforts to obtain facts

When a doctor's medical privileges are suspended after a single incident of alleged substandard patient care, a hospital review committee makes a reasonable effort to obtain facts when it considers "those facts upon which the professional review action is based."  *Meyer v. Sunrise Hosp.*, 22 P.3d 1142, 1151–52 (Nev. 2001).

Sharda's privileges were suspended after he trespassed on hospital property and consulted with a patient, all without his medical privileges at Sunrise.[2]  (ECF No. 46-3).  The hospital medical executive committee relied on these facts when it denied Sharda's RFC.  (*Id.*).  Sharda alleges Sunrise's cease and desist letter was conclusory and that he was invited to the hospital by Dr. Arrastia.  (ECF No. 46).

However, plaintiff admits to the above conduct and does not allege that Dr. Arrastia either knew or had the authority to authorize plaintiff to practice medicine within Sunrise's Division of Radiation Oncology.  (ECF Nos. 11, 35).  Because the facts surrounding the trespass are uncontested, Sunrise met its burden under § 11112(a)(2) to obtain facts surrounding a specific incident of substandard patient care.  *See Meyer*, 22 P.3d at 1151–52; (ECF Nos. 11, 35).

---

[2]  Plaintiff's amended complaint alleges he maintained "an emergency radiation contract for inpatient services at Sunrise" but fails to clarify how the contract differs from medical privileges with the division of radiation oncology.  (ECF No. 11 at 19).

James C. Mahan
U.S. District Judge

### 3. Adequate notice

To qualify for immunity, the hospital must notify a physician when it proposes a professional review action, provide its rationale, and inform the physician of his or her rights, including the right to counsel and any time limits to request a hearing. *See* 42 U.S.C. § 11112(a)(3), (b)(1).

Additionally, if a physician requests a fair hearing, the hospital must provide "the place, time, and date of the hearing, which date shall not be less than 30 days after the date of notice." 42 U.S.C. § 11112(b)(2).

Sunrise satisfied § 11112(b)(1) when it denied plaintiff's third RFC by informing Sharda of its decision, providing its rationale, and giving notice regarding the option to request a fair hearing. (ECF No. 35 at 16).

However, Sunrise failed to establish that its response to plaintiff's request for a fair hearing satisfies § 11112(b)(2). *See* (ECF Nos. 11, 35). Plaintiff's amended complaint and defendants' motion to dismiss both assert a date for a fair hearing was never set, but it was defendants' responsibility to set a date. *See* 42 U.S.C. § 11112(b)(2); *see also* (ECF Nos. 11, 35). Sunrise does not indicate it provided adequate notice, so HCQIA immunity does not apply. *See* 42 U.S.C. § 11112(b)(2); (ECF No. 35).

### 4. Reasonable belief correction is warranted

If the hospital has a reasonable belief that corrective action is necessary to provide better healthcare—and its belief is based on fact—then the action is warranted. 42 U.S.C. § 11112(a)(4). Similar to the first prong, this test is objective. *Austin*, 979 F.2d at 734.

Sunrise revoked Sharda's medical privileges after considering facts surrounding plaintiff's substandard patient care. (ECF No. 35 at 15). Defendants' corrective action was objectively necessary to provide better healthcare because it barred a non-compliant doctor from treating patients, which meets the final fairness standard factor. *See* 42 U.S.C. § 11112(a)(4); *Austin*, 979 F.2d at 734.

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    Sunrise's actions satisfy § 11112(a)(1)–(2) and (4) but fail to satisfy § 11112(a)(3) because

2    defendants did not provide plaintiff with adequate notice under § 11112(b)(2). Accordingly,

3    HCQIA immunity does not apply here.

4              *c.  Exhaustion of administrative remedies*

5          A court has jurisdiction over a private hospital to review its peer-review process if: (1)

6    hospital bylaws outline an administrative procedure for the fair hearing and appeals processes; (2)

7    the bylaws make an enforceable contract; and (3) the hospital fails to abide by its own bylaws,

8    preventing a physician from exhausting his or her administrative remedies. *Meyer*, 22 P.3d at 1148

9    n.3 (holding the court has jurisdiction to consider whether "a hospital board acted

10   unconstitutionally or beyond the conditional immunity of the HCQIA"); *see also Shulman v.*

11   *Washington Hosp. Ctr.*, 222 F. Supp. 59, 64 (D.D.C. 1963) (courts may intervene to require a

12   private hospital to adhere to its own prescribed procedure); *Bock v. John C. Lincoln Hosp.*, 702

13   P.2d 253, 254 (Ariz. Ct. App. 1985) (explaining that when a hospital breaches its own procedural

14   requirements, the court may consider the case as an issue of state common law).

15         Courts have jurisdiction over a private hospital's peer-review process even when the

16   hospital's proceedings are still ongoing. *See Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024, 1031

17   (9th Cir. 1989). In *Pinhas*, a doctor lost his hospital privileges and filed suit with his suspension

18   hearing still pending, alleging antitrust and tort claims. *Id.* at 1026–27. That court held plaintiff

19   was not required to wait for the results of his hearing and could bring his antitrust claim without

20   first exhausting administrative remedies. *Id.* at 1031.

21         Similarly, this court has jurisdiction to consider the adequacy of Sunrise's peer-review

22   process because plaintiff never received a fair hearing. *See* 42 U.S.C § 11112; (ECF No. 11, 35).

23   Similar to the plaintiff in *Pinhas*, Sharda lost his medical privileges, but filed suit before a fair

24   hearing occurred. *See* 894 F.2d at 1031; (ECF No. 35 at 10). For that reason, this court exercises

25   jurisdiction over plaintiff's claims at this time. *See Pinhas*, 894 F.2d at 1031.

26         A private hospital operates without any government agency controlling its internal

27   operations, meaning no statutory requirement to exhaust administrative remedies exists, and a

28   court may exercise its discretion in entertaining a suit. *See Pinhas*, 894 F.2d at 1031; *Shulman*,

**James C. Mahan**
**U.S. District Judge**

- 8 -

222 F. Supp. at 61 ("A private hospital is one that is owned, maintained, and operated by a corporation or an individual without any participation on the part of any governmental agency in its control.").

Sunrise is a limited liability company which must abide by administrative policies from NBME, but NBME is a separate entity that does not control Sunrise's operations.[3] (ECF No. 35). Therefore, there is no statutory requirement for plaintiff to exhaust administrative remedies, and the court may entertain plaintiff's suit. *See Pinhas*, 894 F.2d at 1031; *Shulman*, 222 F. Supp. at 61.

Fair hospital bylaws use HCQIA fairness standards to provide physicians with a multi-step appeal process to challenge review board decisions and exhaust administrative remedies. *See* 42 U.S.C. § 11112(b); *Meyer*, 22 P.3d at 1146–48 (illustrating a private hospital's administrative proceedings). In *Meyer*, defendant Sunrise Hospital followed its bylaws when a committee reviewed plaintiff's misconduct, sent its recommendation to the medical executive committee, and then allowed plaintiff to appeal the lower decisions to the appellate review committee. 22 P.3d at 1147. By following its bylaws, defendant in *Meyer* gave that plaintiff multiple fair hearings, and allowed her to internally exhaust administrative remedies before seeking judicial review. *Id.*

Sunrise's bylaws include the same language from HCQIA and provide physicians with multiple administrative remedies. 42 U.S.C. § 11112; (ECF No. 35-2). After a physician adversely acts against Sunrise or a patient, a committee reviews the physician's conduct, and sends a recommendation for further action to the medical executive committee. (ECF No. 35-2). If the medical executive committee revokes a physician's medical privileges, the physician may request a fair hearing, the results of which are appealable to an appellate review committee, and subject to a final board of trustees' decision. *Id.* The bylaws outline fair administrative procedures which, if followed, would allow a physician to exhaust administrative remedies. *See Meyer*, 22 P.3d at 1146–48; (ECF No. 35).

---

[3] NRS 622A.400 states, "a party may not seek any type of judicial intervention or review of a contested case until after the contested case results in a final decision of the regulatory body," but NBME is specifically excepted from that provision pursuant to NRS 622A.120. NBME is no longer a party in this suit. (EFC No. 45).

1      Under Nevada law, "a hospital's contract can create an enforceable contract between the

2   hospital and its staff" regardless of a clause stating the bylaws do not create a contract between the

3   hospital and physicians. *Williams*, 688 F. Supp. 2d at 1142. The *Williams* court reasoned that:

4          The physician makes an offer to become a member of the hospital staff by
           applying for privileges at the hospital. The hospital and staff accept that offer by
5          granting the physician privileges. The parties agree their relationship will be
           governed by the bylaws, and thus reach a meeting of the minds as to the terms.
6          The hospital and staff have no pre-existing duty to grant privileges to any
           particular physician, and the physician has no pre-existing duty to work at any
7          particular hospital. The physician gains the benefit of treating his patients at the
           hospital, the hospital receives the benefit of providing care to the physician's
8          patients, and the staff gains a member to the association. The parties thus have
           exchanged valuable consideration. A hospital's bylaws therefore may constitute
9          an enforceable contract.

10  *Id.*

11      Defendants point to bylaw clause 12.5.8, labeled "no contract intended," to claim that no

12  contract exists between Sunrise and Sharda. (ECF No. 35 at 5). This clause contradicts *Williams,*

13  which holds bylaws are enforceable contracts when a reasonable jury could find both parties relied

14  on the bylaws and intended to be bound. 688 F. Supp. 2d at 1143; *see also Chudacoff v. Univ.*

15  *Med. Ctr.*, 954 F. Supp. 2d 1065, 1085 (D. Nev. 2013) (citing *Williams*); *Mack v. Est. of Mack*,

16  206 P.3d 98, 108 (Nev. 2009) (Explaining that Nevada law requires an enforceable contract to

17  have "an offer and acceptance, meeting of the minds, and consideration."). Since both parties

18  expect the other party and this court to uphold provisions in the bylaws, both plaintiff and

19  defendants are relying on the bylaws and show their intent to be bound by the terms. (ECF No.

20  11, 35). Consequently, a contract exists. *See Williams*, 688 F. Supp. 2d at 1143.

21      When a hospital violates its own bylaws, the court may ensure claimants have fair hearings

22  by compelling the hospital to follow its bylaws. *See Meyer*, 22 P.3d at 1148 (a private hospital did

23  allow plaintiff to exhaust administrative remedies); *Balkissoon v. Capitol Hill Hosp.*, 558 A.2d

24  304, 309–10 (D.C. 1989) ("A hospital's failure to comply with material procedures is inherently

25  arbitrary."). In *Balkissoon*, the hospital defendant failed to provide plaintiff with a "proper report

26  by the fact-finding committee," which violated its bylaws. *Balkissoon*, 558 A.2d at 310. As a

27  result, that court compelled a fair hearing, even though that plaintiff did not exhaust his

28

administrative remedies.  *Id*.  To protect a doctor's right to a fair hearing, courts may compel a

hospital to adhere to its bylaws.  *Id.*

Sunrise violated its own bylaws when it did not set "the place, time, and date of [Sharda's]

hearing," thereby denying plaintiff a fair hearing.  *See* 42 U.S.C. § 11112.  Sunrise's bylaws require

a response to plaintiff's hearing request within thirty days to establish the hearing's date and

location.  (ECF No. 35-2 at 54).  Sunrise sent plaintiff a timely letter, but both parties agree a

hearing date was never set.[4]  (ECF Nos. 11, 35).  The hospital alleges it asked Sharda to provide

dates for the hearing, but under its own bylaws, it was Sunrise's duty to schedule the hearing.

(ECF No. 35-2 at 54).  Sunrise does not indicate that it followed its bylaws; therefore, this court

may compel the administrative process to resume from the point of Sharda's request for a fair

hearing.  *Balkissoon*, 558 A.2d at 309–10; *see also Bock*, P.2d at 256 (requiring a fair hearing

under Arizona state common law).

A court should not substitute hospital staffing decisions with its own analysis, meaning

courts should require a fair hearing, as envisioned by hospital bylaws, before considering any claim

which might be resolved during the hearing.  *Meyer*, 22 P.3d at 1149 (quoting *Egan v. Athol Mem'l

Hosp.*, 971 F. Supp. 37, 44) ("The Court must not reweigh its own judgment for that of the peer

review committee."); *see also Shulman*, 222 F. Supp. at 63 ("[T]he extent of judicial review is to

require compliance with the prescribed procedure. Beyond that, the courts do not interfere.").

When an element of a claim can be resolved through the hospital's administrative process, courts

should not consider the claim until there is a final peer-reviewed decision.  *See Shulman*, 222 F.

Supp. at 63.

Plaintiff has not exhausted his administrative remedies.  (ECF No. 35).  For this reason,

this court will not consider any claim which, if answered by the court at present time, would usurp

a final hospital staffing decision.[5]  *See Meyer*, 22 P.3d at 1149; *Shulman*, 222 F. Supp. at 63.

---

[4] Contents of defendant's letter acknowledging Sharda's request for fair hearing redacted in defendants' motion to dismiss.  (ECF No. 35 at 10).

[5] Plaintiff's federal claims (due process under the 14th Amendment and an antitrust violation) and conspiracy claim will be considered because the claim elements could not be resolved through administrative review.

James C. Mahan
U.S. District Judge

1        Plaintiff also alleges tortious interference and breach of contract.  (ECF No. 11 at 19–21).

2  Both claims require plaintiff to prove breach or disruption of the contract by defendants, but any

3  breach or disruption could be resolved by compelling a fair hearing.  *See* (*id.*).  Thus, both claims

4  are barred from review until defendants adhere to their bylaws and allow plaintiff to exhaust

5  administrative remedies.  *See Wilcox v. Hi-Desert Mem'l Healthcare Dist.*, 593 Fed. Appx. 736,

6  737 (9th Cir. 2015) (citing *Westlake Cmty. Hosp. v. Superior Court*, 551 P.2d 410,411 (Cal. 1976))

7  ("The district court correctly dismissed the state-law claims for failure to exhaust administrative

8  remedies.").

9                    *d.  Due process claims*

10        A due process claim alleging deprivation of a constitutional right protected from state

11  infringement requires a two-part analysis to determine if a private party's action is attributable to

12  the state.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923 (1982).  "First, the deprivation [stems

13  from the] exercise of some right created by . . . a rule of conduct imposed by the State . . . second,

14  the party charged with deprivation must [be fairly seen as] a state actor."  *Id.*

15        To meet the first prong, a state law must require a hospital to include a mechanism to

16  remove physicians in its bylaws.  *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149

17  (D. Nev. 2011) (citing *Pinhas*, 894 F.2d at 1034) (Stating "compliance with statutorily created

18  system of physician peer-review and with reporting requirements is insufficient to establish state

19  action.").  To meet the second prong, there must be a sufficiently close nexus between the state

20  and the private party, so the private entity's decision is "clothed with the authority of state law."

21  *Id.* at 1150 (citing *West v. Atkins*, 487 U.S. 42, 49 (1988)).

22        Nevada law requires Sunrise to have a mechanism to remove physicians in its bylaws, so

23  the hospital meets the first prong of the state-actor test.  *See id.* at 1149; (ECF No. 35 at 19).

24        However, unlike the public hospital in *Chudacoff*, Sunrise is a private hospital and does

25  not meet the second prong because its decision to revoke Sharda's medical privileges was not

26  connected to the state.  *Chudacoff*, 649 F.3d at 1149; *see also* (ECF No. 35 at 19).  Defendants

27  reviewed Sharda's RFCs internally through Sunrise's credentials committee and medical executive

28

committee, both of which are staffed by Sunrise medical staff members. (ECF No. 35-2 at 54–55); *see also* (ECF No. 46-1).

"When a private actor, such as a hospital, revokes a physician's privileges through its internal processes, it is not considered to be a state action." *Wong v. Dep't of Health & Human Servs.*, No. 2:10-cv-00249-KJD, 2011 WL 769973, at \*5 (D. Nev. Feb. 26, 2011). Sharda failed to illustrate any other relationship between the state and the private hospital. (ECF No. 46). Plaintiff's claim that the delay in his fair hearing constituted a due process violation does not relate to state action and is dismissed. *See Chudacoff*, 649 F.3d at 1149.

> *e. Antitrust claims*

To succeed under the Sherman Act, a plaintiff must "identify a relevant aspect of interstate commerce and then show 'as a matter of practical economics' that the Hospital's activities have a 'not insubstantial effect on the interstate commerce involved.'" *Pinhas*, 894 F.2d at 1032 (quoting *Mitchell v. Frank R. Howard Mem'l Hosp.,* 853 F.2d 762, 764 (9th Cir. 1988)).

To establish a cause of action under § 1 of the Sherman Act, "plaintiff must prove these elements: (1) [a]n agreement among two or more persons or distinct business entities; (2) [w]hich is intended to harm or unreasonably restrain competition; (3) [a]nd which actually causes injury to competition." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1391 (9th Cir. 1984) (quoting *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 290 (9th Cir. 1979)).

Plaintiff's complaint alleges Sunrise's report to the NPDB about his December 2013 trespass was illegitimate and is an antitrust violation.[6] (ECF No. 11 at 17). However, plaintiff's opposition to defendants' motion to dismiss admits his amended complaint fell "short of specific pleading requirements [under the Sherman Act, for example, identifying] a 'relevant market' and injury to completion rather than just Sharda."[7] (ECF No. 46 at 15).

---

[6] Under 42 U.S.C. § 11137(c), Sunrise is not "liable in any civil action with respect to [the NPDB report] . . . without knowledge of the falsity of the information contained in the report." Plaintiff's amended complaint alleges Sunrise did not comply with § 11137, so this court will not address immunity at this time.

[7] Plaintiff further requests the court's leave to amend the antitrust cause of action. (ECF No. 46 at 15). Under United States District Court, District of Nevada local rules, "[f]or each type of relief requested or purpose of the document, a separate document must be filed and a separate

1    The court agrees that plaintiff failed to state a claim upon which relief can be granted. *See*

2    Fed. R. Civ. P. 12(b)(6). The claim is therefore dismissed without prejudice.

3        *f. Civil conspiracy*

4        Plaintiff's civil conspiracy claim stems from the alleged 2001 agreement between Desai

5    and Reisinger, and Reisinger's subsequent attempts to "deceive, challenge, and oppress Sharda"

6    by placing "administrative blocks" to Sharda's privileges. (ECF No. 11 at 13).[8]

7        Defendants claim Sharda fails to allege an underlying tort or "allege sufficient facts to show

8    a plausible agreement" between Desai and Reisinger to commit a tort against him. (ECF No. 35

9    at 28–29). Defendants further argue that employees cannot conspire with an employer or agency

10   when acting on behalf of the corporation. (*Id.*).

11       Civil conspiracy is a Nevada state law claim that "consists of a combination of two or more

12   persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose

13   of harming another, and damage results from the act or acts." *Banerjee v. Cont'l Inc., Inc.*, No.

14   2:16-cv-669-JCM-VCF, 2016 WL 5939748, at *6–7 (D. Nev. Oct. 11, 2016) (quoting *Consol.–*

15   *Generator Nev., Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998)).

16       To state a claim for civil conspiracy, plaintiffs must allege two elements: (1) the

17   commission of an underlying tort; and (2) an agreement between the defendants to commit that

18   tort. *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). Further, when pleading a claim for civil

19   conspiracy, plaintiffs must plead with particular specificity as to "the manner in which a defendant

20   joined in the conspiracy and how he participated in it." *Arroyo v. Wheat*, 591 F. Supp. 141, 144

21   (D. Nev. 1984).

22       Plaintiff failed to sufficiently plead a claim for civil conspiracy because the underlying

23   agreement is implausible, and Sharda does not provide specific details regarding how Reisinger or

24   Desai interfered with his business. *See Banerjee*, 2016 WL 5939748, at *7. The alleged agreement

25

26   event must be selected for that document." LR IC 2-2(b). Thus, plaintiff must make another filing
     if he wants this court to consider his request.

27   [8] Plaintiff also names defendant, Katherine "Kathy" Keeley, as a co-conspirator. (ECF No. 11).
     Plaintiff fails to allege any facts which could show a possible agreement between Keeley, Desai,

28   and Reisinger. (*Id.* at 13). Consequently, this court will not consider her to be part of this alleged
     conspiracy. *See id.*

**James C. Mahan**
**U.S. District Judge**

between Reisinger and Desai is not plausible on its face because it purportedly took place in 2001, before Reisinger served as Sunrise's chief of radiation, and fifteen years before plaintiff filed suit. (ECF No. 35 at 28); *see also Twombly*, 550 U.S. at 544 ("[A] naked assertion of conspiracy . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility."). Additionally, plaintiff does not specify how Reisinger participated in the conspiracy, describing her actions vaguely as "administrative blocks," but fails to identify any unlawful behavior on Reisinger's part. (ECF No. 11 at 13).

Accordingly, defendants' motion to dismiss will be granted as to this claim.

### g. *Declaratory and injunctive relief*

Plaintiff's fourth cause of action is for declaratory and injunctive relief. (ECF No. 11). A claim for "injunctive relief" alone is not a cause of action. *See, e.g.*, *In re Wal–Mart Wage & Hour Emp't Prac. Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-cv-346-JCM-RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) ("[I]njunctive relief is a remedy, not an independent cause of action."); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

"Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985).

Neither remedy is an actionable claim at this time. *See, e.g.*, *Villa v. Silver State Fin. Servs., Inc.*, No. 2:10-cv-02024-LDG, 2011 WL 1979868, at *10 (D. Nev. May 20, 2011). Thus, this claim will be dismissed.

### IV. Conclusion

In sum, this court finds that plaintiff's claims arising under state law (tortious interference, breach of contract) are barred until he exhausts administrative remedies as outlined in defendants' bylaws.

James C. Mahan
U.S. District Judge

1    Defendants' motion to dismiss does not indicate Sunrise followed the exhaustion process

2    set out in its bylaws because the hospital denied plaintiff a fair hearing. (ECF No. 35). As a result,

3    defendants must provide notice within twenty-one (21) days of the date of this order that plaintiff's

4    fair hearing has been scheduled. Plaintiff's federal claims, conspiracy claim, and claims for

5    injunctive and declaratory relief are dismissed without prejudice.

6        Accordingly,

7        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Sunrise and

8    the Board of Trustees of Sunrise Hospital's motion to dismiss (ECF No. 35) be, and the same

9    hereby is GRANTED as to all claims except tortious interference and breach of contract, without

10   prejudice.

11       IT IS FURTHER ORDERED that, within twenty-one (21) days from the date of this order,

12   defendants shall submit notice indicating that plaintiff's fair hearing has been scheduled.

13

     DATED July 3, 2017.

14

15   _____
     UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 16 -